**MICHAEL F.X. GILLIN & ASSOCIATES, P.C.**
**ATTN.: DAVID D. DIPASQUA, ESQUIRE**
      **ID. NO. 76315**
**230 N. MONROE STREET**
**MEDIA, PA 19063**
**610-565-2211**                **Attorney for Defendant, Trec Group, Inc.**
**ddipasqua@gillinlawoffice.com**

_____

### UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **JENNIFER NOVIELLI,** | : | **CIVIL ACTION NO. 16-1247** |
|     **PLAINTIFF** | | |
| **V.** | : | **ALLEGED EMPLOYMENT DISCRIMINATION** |
| **TREC GROUP, et al.** | : | |
|     **DEFENDANTS** | | |

_____

## DEFENDANT, TREC GROUP, INC.'S MOTION FOR SUMMARY JUDGMENT

Defendant, Trec Group, Inc. (hereinafter referred to as the "Trec Group"), by and through its attorney, Michael F.X. Gillin & Associates, P.C., respectfully submits Trec Group's Motion for Summary Judgment as follows.

AND NOW, comes Trec Group, who moves for summary judgment on all of the claims in the Plaintiff's Civil Complaint pursuant to Federal Rule of Civil Procedure 56.

Defense counsel discussed the grounds for said Motion and relief requested with Plaintiff's counsel on October 26, 2016.  Plaintiff's counsel opposes the relief requested herein.

## CONCISE STATEMENT OF THE MATERIAL FACTS UPON WHICH THE MOVING PARTY CONTENDS THERE IS NO GENUINE ISSUE OF MATERIAL FACT

1.    Defendant, Trec Group, Inc., is a certified Women's Business Enterprise having female Barbara Tulskie as owner and president.  Trec Group is an engineering

firm which does electrical, mechanical, structural and civil engineering for numerous companies.

2.      By way of factual background, on April 2, 2014, Plaintiff signed a written employment contract with Peak Staffing, a staffing agency.  Exhibit D-25 and Novielli deposition, page 56, lines 10-16.

3.      In paragraph three (3) of the Plaintiff's Civil Complaint, she avers that at all relevant times hereto, Peak Staffing was Plaintiff's employer.

4.      Subsequently, Trec Group contracted with said staffing agency to utilize the temporary services of the Plaintiff.  On April 14, 2014, Plaintiff started as a temp for the Trec Group.

5.      Plaintiff's temporary services were no longer required on February 20, 2015.

6.      At all relevant times hereto, the Plaintiff never applied for a full-time position at the Trec Group.  Novielli deposition, page 67, lines 9-11.

7.      In paragraph twenty-four (24) of Plaintiff's Civil Complaint, there is an averment that "Plaintiff was hoping to be hired full-time by Defendants" despite her deposition testimony that she didn't speak to the owners about full-time work.  Novielli deposition, page 87, lines 1-9.

8.      On May 26, 2015, Plaintiff filed a "Charge of Discrimination" against Trec Group with the United States Equal Employment Opportunity Commission.  Exhibit D-47.

9.      At no time in Plaintiff's "Charge of Discrimination" does the Plaintiff indicate that she spoke to anyone at Trec Group about alleged gender pay discrimination.

10.     Rather, in paragraph eight (8) of her filing, she avers that she

communicated pay issues with her staffing agency.  During her deposition, the Plaintiff testified that the proper channel of redress regarding her alleged pay discrepancy was to contact Peak staffing.  Novielli deposition, page 73, lines 4-10.  Plaintiff also testified that she sent multiple e-mails to Peak staffing requesting pay increases which is documented in discover documentation received from Peak staffing.  Novielli deposition, page 54, lines 11-13.  Plaintiff's e-mail communications to Peak staffing regarding a pay increase started in August of 2014.  Plaintiff did ultimately receive a pay increase from Peak staffing.

11.     In her deposition, Plaintiff testified that she sent one e-mail to her Trec Group supervisor, Rich Mannices, regarding a pay increase but she did not mention or allege any type of gender pay disparity.  Novielli deposition, page 47, lines 7-21 and page 73, lines 20-23.

12.      In her deposition, Plaintiff testified that she did not speak to anyone else at Trec Group about alleged pay discrepancy nor about any type of alleged gender pay discrimination.  Novielli deposition, page 73, lines 15-23, and page 74, lines 3-6.

13.     To the contrary, during the relevant time frame, Plaintiff sent an e-mail to the staffing agency indicating that she enjoyed working at the Trec Group.  Novielli deposition, page 50, lines 17-21.

14.     In fact, while she was employed as a temp, the Plaintiff admitted that she never sent any written communications to the managers and/or owners of the Trec Group about any type of gender discrimination at anytime.  Novielli deposition, page 80, lines 17-24.

15.      In addition, Plaintiff testified that the Trec Group owners did not retaliate against her.  Novielli deposition, page 94, lines 17-23.

16.     Prior to the Plaintiff's deposition, Plaintiff failed to produce one document in her initial disclosures and/or amended initial disclosures.

17.     Other oddities have occurred as well.  During the Plaintiff's deposition, Plaintiff was questioned about her alleged damages that were raised in her lawsuit and initial disclosures to which the Plaintiff could not answer, and Plaintiff's counsel interrupted that it was a "cut and paste" job and that the damages alleged are erroneous. Novielli deposition, pages 111-113.

18.     No amended civil lawsuit has been filed.

19.     Plaintiff admits to bringing in food to the Trec Group engineering firm, and Plaintiff testified that employees would take accept her lunch sandwiches and provide a monetary "donation" to her but that it was not a business.  Novielli deposition, pages 20-22.

20.     Plaintiff's only other witness, Dominic Vacanti, testified that Plaintiff was actively engaged in selling food and/or other products at work.  Vacanti deposition, page 51, lines 10-13.

21.     Plaintiff testified that her on-line baking company was closed prior to her temp position with the Trec Group, but Plaintiff testified that a friend of hers was "mistaken" when the friend sent a order for baking goods during the course of her temp position at the Trec Group.  Novielli deposition, page 39-40.

22.     Plaintiff also admits to having a social media website communication that indicates "I'm a lady, but when I'm mad, I'm an evil sadistic demon spawn bitch from hell that'll make you wish you were never born..."  Novielli deposition, page 38, lines 9-20.

23.     In addition, there was an e-mail from the Plaintiff to her boyfriend that she wanted the owners to go bankrupt.

24.     Furthermore, during his deposition, the "sworn statement" of Mr. Vacanti was reviewed, and Mr. Vacanti testified that only part of the document was typed up by him.  Vacanti deposition, page 21, lines 13-24.

25.     The two (2) main points of his sworn statement were factually inaccurate.

26.     First, Mr. Vacanti testified that his sworn statement averment number seven (7) that "Mr. Mannices seemed to give preferential treatment to his confidants, who were male" was factually inaccurate as he testified that a female intern was "given preferential treatment over just about everybody..."  Vacanti deposition, page 35, lines 16-18 and page 60, lines 13-21.

27.     Second, Mr. Vacanti testified that his sworn statement averment number eight (8) that Mr. Mannices said "any retaliatory attitude or actions towards Mr. Mauser would result in my termination" was not factually accurate either as he testified that "... I don't recall exactly what his words were.  Maybe I misused a quote..."  Vacanti deposition, page 42, lines 11-20.

28.     On October 15, 2014, there was a meeting between Barbara Tulskie and the Plaintiff wherein they discussed Plaintiff's complaints against Rich Mannices of "not saying hi" to her and that Rich Mannices used her Keurig machine.

29.     Mr. Vacanti testified that the Plaintiff had a Keurig machine that "pretty much everybody used."  Vacanti deposition, page 56, lines 17-18.

30.     Barbara Tulskie was not deposed by the Plaintiff.

31.     Pursuant to the attached "Affidavit of Barbara Tulskie," at said meeting, there was no type of gender discrimination alleged nor any other type of alleged discrimination which is substantiated by Barbara Tulskie's notes of said meeting which is documented at Exhibit D-38.  Subsequently, Barbara Tulskie followed up with these issues.

32.     Plaintiff testified that she did not place, in writing, any allegations of gender discrimination to any Trec Group managers or owners at anytime while she was employed as a temp.  Novielli deposition, page 80, lines 17-24.

33.      Plaintiff also admits that she did not inform Peak staffing, in writing, about any alleged discrimination.  Novielli deposition, page 82, lines 11-21.

34.     With respect to Plaintiff's "Retaliation" claims, Plaintiff does not assert in her EEOC Complaint nor her Civil Complaint who was the person or persons responsible for her termination as a temp.

35.     During her deposition, Plaintiff testified that Rich Mannices was the sole individual that allegedly retaliated against her, and that Barbara and Joseph Tulskie did not retaliate against her.  Novielli deposition, page 93, lines 14-23.

36.     Pursuant to the "Affidavit of Barbara Tulskie," Barbara and Joseph Tulskie made the final decision to terminate Plaintiff temp services after discussing the matter with Rich Mannices.

37.      In the deposition of Rich Mannices, he testified that it was a "mutual decision" between him and the Tulskies.  Mannices deposition, page 72, lines 10-14.

38.     Pursuant to the "Affidavit of Barbara Tulskie," Plaintiff's temp services were

no longer required due to lack of work and Plaintiff's inappropriate behaviors with a co-worker.

39.     Plaintiff secured full-time employment shortly after her temp services ended, and that Plaintiff's current employment compensation is higher than her pay from Peak staffing. Novielli deposition, page 25, lines 7-18.

40.     In their initial disclosures, the Trec Group supplied Plaintiff's counsel with a potential witness list of thirty-two (32) witnesses who will testify that discrimination does not occur at the Trec Group as well as forty-eight (48) documents to support their case.

41.     Pursuant to the "Affidavit of Barbara Tulskie," the Trec Group incorporates said filing into this motion.

42.     Trec Group did not retain another temp to replace the Plaintiff.


### CLAIMS UPON WHICH JUDGMENT IS SOUGHT

A.     **Trec Group is entitled to Summary Judgment regarding Count One-alleged Gender Discrimination and Hostile Work Environment and Count Three-alleged Gender Discrimination and Hostile Work Environment.**

1.     Burden of proof and elements regarding alleged Gender Discrimination

_____To proceed with her claims for gender discrimination under the McDonnell-Douglas test, the Plaintiff must plead the elements of a prima facie case: (1) that she is a member of a protected class; (2) that she was qualified for the position that she held; (3) that she suffered an adverse employment action; and (4) that the adverse action took place under

conditions giving rise to an inference of discrimination.  See, e.g., <u>Jones v. Sch. Dist.of Phila.</u>, 198 F.3d 403, 410 (3d Cir. 1999).  Trec Group agrees that the Plaintiff is a member of a protected class, and that she was qualified for her temp position.  However, Trec Group argues that the Trec Group is not Plaintiff's "employer", and Trec Group argues that the Plaintiff cannot demonstrate a triable issue of fact as to whether she suffered an adverse employment action nor can the Plaintiff establish that any adverse employment action arose in circumstances giving rise to an inference of discrimination.

        2.     <u>"Employer-employee" issue</u>

      At all relevant times hereto, Peak staffing was Plaintiff's employer.  On April 2, 2014, the Plaintiff signed a written employment contract with Peak staffing.  <u>Exhibit D-25 and Novielli deposition, page 56, lines 10-16</u>.  In paragraph three (3) of the Plaintiff's Civil Complaint, the Plaintiff avers that at all relevant times hereto, Peak staffing was Plaintiff's employer.  In addition, the Plaintiff never applied for a full-time position with the Trec Group.  <u>Novielli deposition, page 67, lines 9-11</u>.  During the entirety of her temp services for the Trec Group, Plaintiff was solely paid by Peak staffing.  If This Honorable Court determines that Peak staffing was the sole employer of the Plaintiff, this motion should be granted without reviewing the remainder of Trec Group's arguments.

      In 2015, the United States Court of Appeals for the Third Circuit applied the United States Supreme Court <u>Darden</u> factors to determine whether a temporary employee was the employee of both the staffing firm and the company wherein the temporary employee worked.  <u>Faust v. Tuesday Morning, Inc.</u>, United States Court of Appeals, Third Circuit, No. 14-1452 (2015);  <u>Nationwide Mutual Insurance Co., et al. v. Darden</u>, 502 U.S. 318

(1992).  The <u>Darden</u> factors provides a non-exhaustive list of relevant factors including "the skill required; the source of the instrumentalities and tools; the location of the work; the duration of the relationship between the parties; whether the hiring party has the right to assign additional projects to the hired party; the extent of the hired party's discretion over when and how long to work; the method of payment; the hired party's role in hiring and paying assistants; whether the work is part of the regular business of the hiring party; whether the hiring party is in business; the provision of employee benefits; and the tax treatment of the hired party."  Id. at 323-24.

In the case at bar, Peak staffing controlled every aspect of Plaintiff's work payments, work benefits, and work tax-related issues all in accordance with Plaintiff's employment contract with Peak staffing.  <u>Exhibit D-25 and Novielli deposition, page 56, lines 10-16</u>.  Plaintiff testified that she never saw Trec Group's employee manual further illustrating that she was not deemed an "employee" of the Trec Group.  <u>Novielli deposition, page 120, lines 13-24 and page 121, lines 1-4</u>.  Rich Mannices also testified that Peak temps are not provided an employee handbook at the Trec Group.  <u>Mannices deposition, page 31, lines 3-7</u>.  As per the above paragraphs, Plaintiff contacted Peak staffing repeatedly, by e-mail, for a pay raise further demonstrating that Peak staffing was her sole employer.  With respect to the other <u>Darden</u> factors, Rich Mannices testified that the Plaintiff was brought in as an assistant to Trec Group employee Henry Mauser.  <u>Mannices deposition, page 38, lines 15-23</u>.  Plaintiff's temp services were limited in duration; not needed any further in February of 2015; and the Trec Group did not replace her with another temp.  Accordingly, based upon the relevant <u>Darden</u> factors, Peak

staffing was the sole employer of the Plaintiff.

        3.      <u>Elements three (3) and four (4) cannot be proven by the Plaintiff</u>

_____A.      Pursuant to the above Trec Group's "Concise Statement of the Material Facts Upon Which The Moving Party Contends There is No Genuine Issue of Material Fact," and the attached "Affidavit of Barbara Tulskie", Barbara and Joseph Tulskie made the final decision to terminate Plaintiff temp services as the Plaintiff's temp services were no longer required due to lack of work and Plaintiff's inappropriate behaviors with a co-worker.

        B.      In paragraph thirty-eight (38) of her Civil Complaint, due to her protected class, the Plaintiff alleges that the Trec Group treated her differently in pay and treatment which ultimately led to her termination and separation from employment.

        C.      However, at all relevant times hereto, the Plaintiff never mentioned any alleged gender pay discrimination to anyone at the Trec Group so it would have been factually impossible for anyone at the Trec Group to have discriminated against the Plaintiff.  At no time in the Plaintiff's "Charge of Discrimination" with the EEOC does the Plaintiff indicate that she spoke to anyone at the Trec Group about alleged gender pay discrimination.  Rather, in paragraph eight (8) of her EEOC filing, the Plaintiff avers that she communicated pay issues with her staffing agency.  In her deposition, Plaintiff testified that she sent one e-mail to her Trec Group supervisor regarding a pay increase but she did not mention or allege any type of gender pay disparity.  <u>Novielli deposition, page 47, lines 7-21 and page 73, lines 20-23</u>.  In her deposition, Plaintiff testified that she did not speak to anyone else at the Trec Group about alleged pay discrepancy nor

about any type of alleged gender pay discrimination.  <u>Novielli deposition, page 73, lines 15-23, and page 74, lines 3-6</u>.  In fact, while she was employed as a temp, the Plaintiff admitted that she never sent any written communications to the managers and/or owners of the Trec Group about any type of gender discrimination at anytime.  <u>Novielli deposition, page 80, lines 17-24</u>.  Accordingly, the Plaintiff does not have any facts to support her claim that an adverse employment action occurred as a result of alleged gender pay discrimination.

     D.     Similarly, the Plaintiff cannot demonstrate a triable issue of fact as to whether any alleged adverse employment action arose in circumstances allegedly involving gender discrimination.  As per the above paragraph, the Plaintiff testified that she never provided any written communications to any managers and/or owners of the Trec Group about any type of gender discrimination at anytime.  <u>Novielli deposition, page 80, lines 17-24</u>.  Plaintiff also admits that she did not inform Peak staffing, in writing, about any alleged discrimination.  <u>Novielli deposition, page 82, lines 11-21</u>.

As per the "Affidavit of Barbara Tulskie," on October 15, 2014, at the meeting between Barbara Tulskie and the Plaintiff, there was no type of gender discrimination alleged by the Plaintiff nor any other type of alleged discrimination alleged by the Plaintiff.  Plaintiff claims that she mentioned unfair treatment by Rich Mannices to Barbara Tulskie at said meeting.  As per the "Affidavit of Barbara Tulskie," at said meeting, there was no type of gender discrimination alleged which is substantiated by Barbara Tulskie's notes of said meeting which is documented at Exhibit D-38.  Rather, the meeting was about Plaintiff's complaints about Rich Mannices "not saying hi" to her and

that Rich Mannices used her Keurig machine both of which Barbara Tulskie addressed

with Rich Mannices.  Accordingly, the Plaintiff does not have any facts to support her

claim that an adverse employment action occurred as a result of alleged gender

discrimination.

      2.      <u>Alleged Hostile Work Environment</u>

      A.      In Plaintiff's Civil Complaint, there are no specific averments pled of

"hostile work environment."  The first time that the phrase "Hostile Work Environment"

appears is in the caption of Count One of the lawsuit.  Accordingly, Plaintiff has failed to

properly plead said cause of action.

      3.      <u>McDonnell Douglas burden-shifting</u>

      A.      First, for the factual and legal reasons specified above, Trec Group argues

that the Plaintiff has failed to establish a prima facie case of gender discrimination and

hostile work environment.

      B.      If This Honorable Court believes that the Plaintiff has established a prima

facie case, then the burden of production shifts to the Trec Group "to articulate some

legitimate, nondiscriminatory reason for the employee's rejection."  <u>McDonnell Douglas</u>,

411 U.S. at 802.  Pursuant to the "Affidavit of Barbara Tulskie," Barbara and Joseph

Tulskie made the final decision to terminate Plaintiff temp services as her services were

no longer required due to lack of work and Plaintiff's inappropriate behaviors with a co-

worker.   Accordingly, there were legitimate, nondiscriminatory business reasons to

terminate the Plaintiff's temp services.

      C.      Plaintiff did not take the deposition of Barbara Tulskie so Trec Group would

argue that Plaintiff waived her right to argue alleged "pre-text" reasons for said termination on the next burden-shifting issue.  In addition, the Plaintiff testified the Trec Group owners did not retaliate against her.  Novielli deposition, page 94, lines 17-23.

**B.      Trec Group is entitled to Summary Judgment regarding Count Two- alleged Retaliation and Count Four- alleged Retaliation.**

1.      Burden of proof and elements regarding alleged Retaliation

In order to establish a prima facie case of retaliation, a plaintiff must show that: (1) she engaged in a protected employee activity; (2) she suffered an adverse employment action either after or contemporaneous with the employee's protected activity; and (3) a causal connection exists between the employee's protected activity and the employer's adverse action.  Marra v. Phila. Housing Auth., 497 F.3d 286, 300 (3d Cir. 2007).

2.      Element one (1) cannot be proven by the Plaintiff

_____"A general complaint of unfair treatment is insufficient to establish protected activity under Title VII."  Curay-Cramer v. Ursuline Acad. Of Wilmington, Del., Inc., 450 F.2d 130, 135 (3d Cir. 2006).  "Opposition to an illegal employment practice must identify the employer and the practice- if not specifically, at least by context."  Id.  In the case at bar, Plaintiff did not engage in a protected activity regarding her general complaints about Rich Mannices at the October 15, 2014 meeting with Barbara Tulskie.  As per the above arguments, Plaintiff did not notify anyone in writing about any alleged discrimination.  In addition, Plaintiff testified that the Trec Group owners did not retaliate

against her.  <u>Novielli deposition, page 94, lines 17-23</u>.  In her deposition, Plaintiff claims

that Rich Mannices was solely responsible for retaliating against her, but according to the

"Affidavit of Barbara Tulskie," Barbara and Joseph Tulskie made the final decision which

negates her theory.

                3.       <u>Elements two (2) and three (3) cannot be proven by the Plaintiff</u>

_____As per the above paragraphs, Trec Group argues that the Plaintiff did not engage

in a protected activity and that Trec Group did not terminate the Plaintiff's temp services

for any discriminatory reason as per the "Affidavit of Barbara Tulskie."  The purpose of

the anti-retaliation provisions is to prohibit employer actions that deter employees from

making complaints of discrimination.  <u>Burlington N. & Santa Fe Ry. Co. v. White</u>, 548 U.S.

53, 68 (2006).  First, the Trec Group was not the employer of the Plaintiff.  Second, as

per her deposition testimony as described above,  the Plaintiff did not make any written

allegations of discrimination against the Trec Group while she was a temp there.  Third,

there was a significant time gap between the Plaintiff's e-mail communications about a

pay raise which were in August of 2014, and when her services were terminated in

February of 2015, negating a "retaliation" theory.

_____

**C.    Count Five was previously dismissed by Court Order in this matter**

**when Peak staffing was removed as a party to this action.**

                                       Respectfully submitted,
                                       **Michael F.X. Gillin & Associates, P. C.**

Dated:_11/1/16_                 By:    _David DiPasqua /s/_____
                                        David D. DiPasqua, Esquire
                                        Attorney for Defendant, Trec Group, Inc.

**MICHAEL F.X. GILLIN & ASSOCIATES, P.C.**
**ATTN.: DAVID D. DIPASQUA, ESQUIRE**
      **ID. NO. 76315**
**230 N. MONROE STREET**
**MEDIA, PA 19063**
**610-565-2211**               **Attorney for Defendant, Trec Group, Inc.**
**ddipasqua@gillinlawoffice.com**

---

### UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **JENNIFER NOVIELLI,** | : | **CIVIL ACTION NO. 16-1247** |
|       **PLAINTIFF** | | |
| **V.** | : | **ALLEGED EMPLOYMENT DISCRIMINATION** |
| **TREC GROUP, et al.** | : | |
|       **DEFENDANTS** | | |

---

### <u>CERTIFICATE OF SERVICE</u>

     I, David D. DiPasqua, Esquire, attorney for Defendant, Trec Group, Inc., hereby certifies that Defendant Trec Group's Motion for Summary Judgment was served by e-mail to opposing counsel on November 10, 2016 to Christopher J. Delgaizo, Esquire at cdelgaizo@hotmail.com and cd@lawkm.com

                       MICHAEL F.X. GILLIN & ASSOCIATES
                       By: __David DiPasqua/s/_____
                           David D. DiPasqua, Esquire
                           Attorney for Defendant, Trec Group, Inc.