IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **JENNIFER NOVIELLI,**<br>          **Plaintiff,** | **CIVIL ACTION** |
| v. | |
| **TREC GROUP, INC.,**<br>          **Defendant.** | **NO.  16-1247** |

**DuBois, J.**                                                                                                   **March 8, 2017**

## M E M O R A N D U M

### I.   INTRODUCTION

This is an employment discrimination case. Plaintiff Jennifer Novielli worked as a "Civil Designer" for defendant Trec Group, Inc. ("Trec") from April 14, 2014, to February 20, 2015. Plaintiff was placed in that job by Peak Technical Services, Inc. ("Peak"), a staffing agency. Plaintiff's Complaint alleges that she experienced gender discrimination and a hostile work environment, and that her employment was terminated in retaliation for complaining about that discrimination. Presently before the Court is Trec's Motion for Summary Judgment. For the reasons that follow, Trec's Motion for Summary Judgment is granted in part and denied in part.

### II.   BACKGROUND

   a.   Factual Background

The relevant facts as set forth in the evidence submitted by the parties are as follows. Plaintiff Jennifer Novielli signed an employment agreement with Peak on April 2, 2014, under which she was assigned to work for Trec. Trec's Mot. Summ. J. ("Trec's Mot.") (Document No. 18, filed November 10, 2016), Ex. D-25; Trec's Mot., Deposition of Jennifer Novielli ("Novielli Dep.") at 55:19–56:16. Plaintiff began working at Trec on April 14, 2014. Trec's Mot., Ex. D-25. Plaintiff's employment agreement provided that Peak was her employer, Peak directly

compensated plaintiff, and Peak then billed Trec for plaintiff's services. *Id*. Plaintiff testified that during her employment at Trec, she worked at Trec's facility; used Trec's computer; was interviewed, supervised, and disciplined by Trec employees; and that the decision to terminate plaintiff's employment was made by a Trec employee. Novielli Dep. at 54:18–55:5, 136:10–137:7.

Domenic Vacanti, another temporary employee placed at Trec by Peak, also testified that he worked at Trec's facility; used Trec's computer and printer; was interviewed by a Trec employee; was supervised by a Trec employee who told him what to do, and who had the power to discipline and fire him. Trec's Mot., Deposition of Domenic Vacanti ("Vacanti Dep.") at 64:5–65:16. Mr. Vacanti also testified that he believed Trec had more control over his daily activities than Peak. Vacanti Dep. at 65:17–65:19.

Plaintiff testified that in August of 2014, she discussed her rate of pay with Mr. Vacanti. Novielli Dep. at 47:22–24. Mr. Vacanti testified that he was "shocked" to learn that he earned more than plaintiff because plaintiff had a college degree in engineering and Mr. Vacanti did not. Vacanti Dep. at 72:21–73:3. As a result of her conversation with Mr. Vacanti, plaintiff requested a pay increase from her supervisor, Richard Mannices, who told her to "go to Peak." Novielli Dep. at 47:3–48:8. Plaintiff communicated with Peak, and Peak "said they would talk to Trec about it." Novielli Dep. at 48:4–8. Eventually, plaintiff received a pay increase to match her male coworkers. Novielli Dep. at 133:11–15.

After plaintiff's request for a pay increase, plaintiff testified that Mr. Mannices "stopped talking" to her and "purposefully ignore[d]" her in front of coworkers such that plaintiff felt "inferior." Novielli Dep. at 134:12–135:7. Plaintiff also testified that Mr. Mannices allowed the

2

male employees in the office to "bicker loudly," but told plaintiff that she "needed to soften [her] tone" during confrontations with coworkers. Novielli Dep. at 78:18–79:4.

Plaintiff testified that she raised concerns about Mr. Mannices during a meeting with Barbara Tulskie, owner and president of Trec. Novielli Dep. at 78:18–80:8, 30:2–5. That meeting took place on October 15, 2014. Concise Statement of Material Facts ¶ 28 (Document No. 18, filed November 10, 2016). Specifically, plaintiff testified that she told Ms. Tulskie that Mr. Mannices "was treating [her] differently than the male employees. He would not address [plaintiff.] He would not speak to [plaintiff.]" Novielli Dep. at 80:1–8. Ms. Tulskie stated in her affidavit that "there was no type of gender discrimination alleged by the Plaintiff nor any other type of alleged discrimination alleged by the Plaintiff" at the October 15, 2014 meeting. Trec's Mot., Affidavit of Barbara Tulskie ("Tulskie Aff."). Plaintiff admitted that she did not put into writing any allegations of unlawful discrimination during her time at Trec. Novielli Dep. at 80:17–82:21. According to plaintiff, after her complaints, in November of 2014, Mr. Mannices told plaintiff that she "needed to softer [her] tone and be less assertive," and that she considered this to be in retaliation for her various complaints. *Id*. at 92:17–93:16.

Plaintiff's contract was terminated on February 20, 2015. Novielli Dep. at 53:21–54:1; Pl.'s Mem. in Opp., Ex. D. Peak's log of its communications with Trec reads "[l]etting Jen Novielli go as of 2/20 . . . Wants a replacement asap. Needs ADA experience." Pl.'s Mem. in Opp., Ex. D. When asked about that log entry, Mr. Mannices testified that Trec did not plan to replace plaintiff immediately, and that Trec did not ultimately replace plaintiff. Trec's Mot., Deposition of Richard Mannices ("Mannices Dep.") at 84:4–3. Rather, Mr. Mannices testified that by February of 2015, Trec "had planned to let [plaintiff] go because of the lack of work." *Id.* at 72:15–24. Ms. Tulskie also stated by affidavit that plaintiff was terminated because her

services "were no longer required due to lack of work." Tulskie Aff. "Barbara and Joseph Tulskie made the final decision to terminate Plaintiff [sic] temp services after discussing with Rich Mannices." Tulskie Aff; *see also* Mannices Dep. 72:10–14. Joseph Tulskie is Mr. Mannices' superior at Trec. Mannices Dep. at 9:5–8.

According to plaintiff, her primary project at Trec was "the ADA project." Novielli Dep. at 63:14–16. She further testified that at the time of her termination, the ADA project was not yet finished, and that the project would take "a few months" more to complete. *Id*. at 62:10–64:14. In May of 2015, or about three months after her termination, plaintiff received a text message from George Yenovkian, a male employee at Trec, asking for "assistance with an ADA diagram." *Id*. at 60:22–61:12; 147:23–148:10. Mr. Yenovkian had never worked on the ADA project during plaintiff's time at Trec. *Id*. at 148:11–13. Mr. Vacanti testified in his deposition that Mr. Yenovkian began working on the ADA project after plaintiff's termination. Vacanti Dep. at 29:12–30:13.

      b. Procedural Background

Plaintiff's Complaint was filed in this Court on March 17, 2016. The Complaint included five claims against both Trec and Peak: gender discrimination and hostile work environment under Title VII of the Civil Rights Act of 1964 ("Title VII") (42 U.S.C. 2000e-2 *et seq.*) (Count One), retaliation under Title VII (Count Two), gender discrimination and hostile work environment under the Pennsylvania Human Relations Act ("the PHRA") (43 P.S. 951 *et seq.*) (Count Three), retaliation under the PHRA (Count Four), and a single claim for unequal and/or disparate pay under both the federal Equal Pay Act, 29 U.S.C. § 206, and the Pennsylvania Equal Pay Act, 43 P.S. 336 (Count Five). On July 22, 2016, plaintiff filed a Motion for Voluntary Dismissal as to all claims against Peak and Count Five of the Complaint in its entirety. The Court

granted the Motion. What remains in the case are Counts one through four against Trec as the sole defendant. After discovery was completed, Trec filed the present Motion for Summary Judgment as to the four remaining Counts.

### III. APPLICABLE LAW

    a. <u>Summary Judgment Standard</u>

The Court will grant summary judgment if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). A fact is material when it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

The Court's role at the summary judgment stage "is not . . . to weigh the evidence and determine the truth of the matter but to determine whether . . . there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Anderson*, 477 U.S. at 249. In making this determination, "the court is required to examine the evidence of record in the light most favorable to the party opposing summary judgment, and resolve all reasonable inferences in that party's favor." *Wishkin v. Potter*, 476 F.3d 180, 184 (3d Cir. 2007). However, the party opposing summary judgment must identify evidence that supports each element on which it has the burden of proof. *Celotex Corp.*, 477 U.S. at 322.

### IV. DISCUSSION

    a. <u>Plaintiff's Employer</u>

As a threshold issue, Trec argues that plaintiff was employed by Peak, not Trec. Based on this argument, Trec moves for summary judgment on all Counts, claiming that it did not fire

plaintiff, and therefore it cannot be liable for discrimination or retaliation on that basis. The Court rejects Trec's argument.

In determining whether someone is an employee, courts consider "the hiring party's right to control the manner and means by which the product is accomplished." *Nationwide Mut. Ins. Co. v. Darden*. 503 U.S. 318, 323 (U.S. 1992). *Darden* set out a non-exhaustive list of factors relevant to such an analysis. *Id*. at 232–24. In applying the *Darden* factors, the United States Court of Appeals for the Third Circuit focused on "which entity paid [the employees'] salaries, hired and fired them, and had control over their daily employment activities." *Faush v. Tuesday Morning, Inc.*, 808 F.3d 208, 214 (3d Cir. 2015) (quoting *Covington v. Int'l Ass'n of Approved Basketball Officials*, 710 F.3d 114, 119 (3d Cir. 2013)). On a related issue, the Third Circuit has held that an employee's status as temporary, without more, is insufficient to warrant the granting of a motion for summary judgment in Title VII and PHRA cases. *Faush*, 808 F.3d at 219–20.

Although some evidence suggests plaintiff was employed by Peak, plaintiff has presented ample evidence that Trec had a right to control her work sufficient to make her Trec's employee. Plaintiff testified that during her time at Trec, she worked at Trec's facility; she used Trec's computer; she was interviewed, supervised, and disciplined by Trec employees; and that the decision to terminate plaintiff's employment was made by a Trec employee. Novielli Dep. at 54:18–55:5, 136:10–137:7. Mr. Vacanti, another temporary employee placed at Trec by Peak, also testified that he worked at Trec's facility; used Trec's computer and printer; was interviewed by a Trec employee; was supervised by a Trec employee who told him what to do, and who had the power to discipline and fire him. Trec's Mot., Deposition of Domenic Vacanti ("Vacanti Dep.") at 64:5–65:16. Mr. Vacanti further testified that he believed Trec had more control over his daily activities than Peak. Vacanti Dep. at 65:17–65:19. The Court concludes that this

testimony is sufficient for a jury to find that plaintiff was Trec's employee. *Anderson*, 477 U.S. at 249.

### b. Hostile Work Environment

Trec seeks summary judgment as to plaintiff's claims of hostile work environment brought under Title VII (Count I) and the PHRA (Count III). Trec's Mot. at 7. Trec argues that plaintiff's Complaint has provided "no specific averments" to support that claim, and therefore plaintiff "has failed to properly plead said cause of action." *Id*. at 12.

Hostile work environment is a distinct theory from gender-based discrimination. To establish a prima facie case of hostile work environment sexual harassment under both Title VII, the United States Court of Appeals for the Third Circuit requires a plaintiff to prove that:

> (1) the employee suffered intentional discrimination because of their sex; (2) the discrimination was pervasive and regular; (3) the discrimination detrimentally affected the plaintiff; (4) the discrimination would detrimentally affect a reasonable person of the same sex in that position; and (5) the existence of *respondeat superior* liability.

*Tourtellotte v. Eli Lilly & Co.*, 636 F. App'x 831, 845 (3d Cir. 2016) (citing *Weston v. Pennsylvania*, 251 F.3d 420, 426, 433 n.3 (3d Cir. 2001) ("The proper analysis under Title VII and the Pennsylvania Human Relations Act is identical, as Pennsylvania courts have construed the protections of the two acts interchangeably.")).

The party opposing a motion for summary judgment must identify evidence that supports each element on which it has the burden of proof. *Celotex Corp.*, 477 U.S. at 322. Therefore, plaintiff is required to produce evidence to support each of the above elements of her hostile work environment claim, and plaintiff has failed to do so. Plaintiff's Response does not mention the hostile work environment claim, let alone point to evidence that supports each of the five elements of the claim. Because plaintiff has failed to support her hostile work environment

7

claim, the Court grants Trec's Motion for Summary Judgment on that claim under both Title VII and the PHRA.

    c. Discrimination

Trec also seeks summary judgment as to plaintiff's claims of gender discrimination brought under Title VII (Count I) and the PHRA (Count III). Trec's Mot. at 7. The three-step *McDonnell Douglas* burden-shifting test applies to claims of discrimination under both Title VII and the PHRA. *Jones v. Sch. Dist. of Philadelphia*, 198 F.3d 403, 410 (3d Cir. 1999) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–03 (1973)). Under the first step of that test, the plaintiff has the burden of establishing a prima facie case of discrimination. *Jones*, 198 F.3d at 410. If plaintiff succeeds, the burden of production shifts to the defendant, who must "articulate some legitimate, nondiscriminatory reason for the employee's [termination]." *Id*. Finally, if the defendant meets its burden of production, the burden shifts back to the plaintiff, who has the opportunity to prove that defendant's articulated reasons "were not its true reasons, but were a pretext for discrimination." *Id*. Trec argues the evidence supports Trec at each stage of the *McDonnell Douglas* burden-shifting test. Trec's Mot. at 7–13.

    i. *Step One:* Prima Facie *Case of Discrimination*

Under the first step of the test, the plaintiff has the burden to establish a prima facie case of discrimination. *Jones*, 198 F.3d at 410. Title VII and the PHRA both require plaintiff to prove (1) "that [s]he is a member of a protected class," (2) that she "is qualified for the position," and (3) that she "was either not hired or fired from that position" (4) "under circumstances that give rise to an inference of unlawful discrimination such as might occur when the position is filled by a person not of the protected class." *Id*. at 410–11. Trec does not contest that plaintiff is a member of a protected class and that she was qualified for the position. Rather, Trec argues that

plaintiff has failed to establish the third and fourth requirements of her prima facie case of discrimination.

As to the third requirement, Trec first argues that plaintiff was not a Trec employee, and therefore Trec did not formally fire plaintiff. Trec's Mot. at 8. However, as discussed *supra*, plaintiff has presented evidence on which reasonable jury could conclude that plaintiff was a Trec employee. And Trec's own evidence shows that the decision to terminate plaintiff's contract was made by Trec, and not by Peak: Ms. Tulskie stated in her affidavit that "Barbara and Joseph Tulskie made the final decision to terminate Plaintiff [sic] temp services after discussing with Rich Mannices." Tulskie Aff.; *see also* Mannices Dep. 72:10–14. The Court therefore rejects Trec's argument as to the third requirement.

As to the fourth requirement, Trec argues that plaintiff "does not have any facts to support her claim that an adverse employment action occurred as a result of alleged gender discrimination." Trec's Mot. at 12. Plaintiff testified that her supervisor, Mr. Mannices "purposefully ignore[d]" her in front of coworkers such that plaintiff felt "inferior." Novielli Dep. at 134:12–135:7. Plaintiff also testified that Mr. Mannices allowed the male employees in the office to "bicker loudly," but told plaintiff that she "needed to soften [her] tone" during confrontations with coworkers. Novielli Dep. at 78:18–79:4. Plaintiff further testified that she reported to Ms. Tulskie that Mr. Mannices "was treating [her] differently than the male employees." Novielli Dep. at 80:1–8. Plaintiff's testimony is some evidence, albeit not strong, that she was the victim of unlawful discrimination, and the alleged perpetrator of that discrimination, Mr. Mannices, participated directly in the decision to terminate plaintiff. Tulskie Aff.; Mannices Dep. 72:10–14. This evidence "give[s] rise to an inference of unlawful discrimination." *Jones*, 198 F.3d at 411.

9

Based on the evidence cited above, the Court concludes that a reasonable jury could conclude that plaintiff has established a prima facie case of discrimination, and rejects Trec's argument under step one of *McDonnell Douglas*.

### ii. *Step Two: Defendant's Legitimate, Nondiscriminatory Reason*

Having concluded, for purposes of the Motion for Summary Judgment, that plaintiff has established a prima facie case of discrimination, the burden of production shifts to the Trec "to articulate some legitimate, nondiscriminatory reason for the employee's rejection." *Jones*, 198 F.3d at 410. Ms. Tulskie has sworn that plaintiff was terminated because her services "were no longer required due to lack of work." Tulskie Aff. Mr. Mannices testified that by February of 2015, Trec "had planned to let [plaintiff] go because of the lack of work." *Id.* at 72:15–24. Mr. Mannices also sent a company-wide email explaining that plaintiff's termination was a business decision made after considering Trec's "workload" and "operational costs." Pl's Resp., Ex. J.[1] The Court concludes that Trec has met its burden by pointing to "lack of work" and "operational costs" as a legitimate, nondiscriminatory reason for terminating plaintiff.

### iii. *Step Three: Plaintiff's Opportunity to Prove Pretext*

Finally, when a plaintiff establishes a prima facie case of discrimination, and the defendant articulates a legitimate, nondiscriminatory reason for the alleged discrimination, the plaintiff has the opportunity to prove that defendant's claimed reason is pretext for illegal discrimination. *Jones*, 198 F.3d at 410. Trec urges the Court to conclude that that plaintiff waived her right to rebut Trec's nondiscriminatory reason because plaintiff failed to take the

---

[1] Ms. Tulskie also stated in her affidavit that plaintiff was terminated because of unspecified "inappropriate behaviors with a co-worker." Tulskie Aff. Plaintiff asserts that Trec raised this argument for the first time in its Motion, Pl.'s Mem. in Opp. at 7, and Trec has pointed to no previously disclosed evidence to support this alternative nondiscriminatory reason for terminating plaintiff. Therefore, for purposes of the pending Motion, the Court's decision is based solely on Trec's first claimed nondiscriminatory reason for terminating plaintiff—lack of work and operational costs.

deposition of Ms. Tulskie. Trec's Mot. at 12–13. The Court rejects this argument. However, because Trec has articulated a legitimate, nondiscriminatory reason for plaintiff's termination, the burden shifts to plaintiff to rebut Trec's claim.

At the time of her termination, the ADA project on which plaintiff worked was not yet finished, and plaintiff estimated that the project would take "a few months" more to complete. Novielli Dep. at 62:10–64:14. In May of 2015, or about three months after her termination, plaintiff received a text message from George Yenovkian, a male employee at Trec, asking for "assistance with an ADA diagram." *Id.* at 60:22–61:12; 147:23–148:10. Mr. Yenovkian had never worked on the ADA project during plaintiff's time at Trec. *Id.* at 148:11–13. Mr. Vacanti testified in his deposition that Mr. Yenovkian began working on the ADA project after plaintiff's termination. Vacanti Dep. at 29:12–30:13. This evidence, taken "in the light most favorable to the party opposing summary judgment," *Wishkin*, 476 F.3d at 184, suggests that there was not, as Trec claims, a "lack of work."

In addition, a log of Peak's communications with Trec includes an entry reading "[l]etting Jen Novielli go as of 2/20 . . . Wants a replacement asap. Needs ADA experience." Pl.'s Mem. in Opp., Ex. D. The log entry is skeletal, and it is not clear who wrote the entry or whether the entry is based upon reliable information. But considering this evidence in the light most favorable to plaintiff, *Wishkin*, 476 F.3d at 184, the log entry supports plaintiff's rebuttal. First, for purposes of the present Motion, the Court assumes that the log was created by a Peak employee, based on a communication received from a Trec employee with personal knowledge of Trec's business needs. Second, given that assumption, the entry is evidence that Trec required a replacement for plaintiff immediately. Third, the entry is evidence that someone at Trec required a replacement with "ADA experience." The log entry supports plaintiff's argument that

11

Trec needed an employee to replace plaintiff's workload, which tends to refute Trec's claim that plaintiff was terminated due to a "lack of work." Based on this evidence, a reasonable jury could conclude that plaintiff successfully rebutted Trec's claimed nondiscriminatory reason for terminating plaintiff. The Court therefore rejects Trec's argument under step three of the *McDonnell Douglas* test.

Based on the evidence above, a reasonable jury could conclude that plaintiff has established a *prima facie* case of discrimination, that Trec has asserted a nondiscriminatory reason for terminating plaintiff, and that plaintiff has presented evidence that Trec's claimed reason is pretext for unlawful discrimination. The Court therefore denies Trec's Motion for Summary Judgment as to the discrimination claims brought under Counts I and III.

    d.  <u>Retaliation</u>

Next, Trec seeks Summary Judgment as to plaintiff's claims of retaliation brought under Title VII (Count II) and the PHRA (Count IV). To establish a prima facie case of retaliation, a plaintiff has the burden of establishing that she engaged in "(1) protected employee activity; (2) adverse action by the employer either after or contemporaneous with the employee's protected activity; and (3) a causal connection between the employee's protected activity and the employer's adverse action." *Marra v. Phila. Hous. Auth.*, 497 F.3d 286, 300 (3d Cir. 2007). Trec argues that plaintiff has failed to present sufficient evidence to support all three requirements.[2]

    i.  *Protected Employee Activity*

Trec argues that plaintiff did not engage in a protected employee activity. Trec's Mot. at 13. The opposition clause of Title VII makes it "unlawful . . . for an employer to discriminate against any . . . employe[e] . . . because he has opposed any practice made . . . unlawful . . . by

---

[2] Although the *McDonnell Douglas* test also applies to retaliation claims, *Marra*, 497 F.3d at 300, Trec's Motion argues only that plaintiff has failed to establish a prima facie case of retaliation.

this subchapter." *Crawford v. Metro. Gov't of Nashville & Davidson Cty., Tenn.*, 555 U.S. 271, 276 (2009) (citing 42 U.S.C.A. § 2000e-3)). Similarly, the PHRA prohibits employers from "discriminat[ing] in any manner against any individual because such individual has opposed any practice forbidden by this act." *Jones v. Sch. Dist. of Phila.*, 19 F. Supp. 2d 414, 421 (E.D. Pa. 1998), *aff'd*, 198 F.3d 403 (3d Cir. 1999). In the United States Court of Appeals for the Third Circuit, "there is no hard and fast rule as to whether the conduct in a given case is protected," but "informal protests of discriminatory employment practices, including making complaints to management" are protected. *Curay-Cramer v. Ursuline Acad. of Wilmington, Del., Inc.*, 450 F.3d 130, 135 (3d Cir. 2006). However, "[a] general complaint of unfair treatment is insufficient to establish protected activity under Title VII." *Id*. Rather, "it must be possible to discern from the context of the statement that the employee opposes an unlawful employment practice." *Id*. As discussed *supra*, a reasonable jury could determine that plaintiff has established a prima facie case of unlawful discrimination under Title VII and the PHRA. Plaintiff's retaliation claim is based upon opposition to that alleged discrimination.

Trec first argues that plaintiff reported only "general complaints about Rich Mannices at the October 15, 2014 meeting with Barbara Tulskie," and did not complain of unlawful gender discrimination. Trec's Mot. at 13. On this issue, plaintiff testified that she informed Ms. Tulskie, the owner and president of Trec, that her supervisor, Mr. Mannices "was treating [her] differently than the male employees. He would not address [plaintiff.] He would not speak to [plaintiff.]" Novielli Dep. at 80:1–8. Ms. Tulskie has sworn that plaintiff reported no unlawful discrimination at the meeting. Tulskie Aff. However, "the court is required to examine the evidence of record in the light most favorable to the party opposing summary judgment[.]" *Wishkin*, 476 F.3d at 184. In the light most favorable to plaintiff, who opposes the Motion for

Summary Judgment, plaintiff informed Ms. Tulskie that plaintiff had been treated differently than her male coworkers, and that plaintiff opposed that disparate treatment. Plaintiff's testimony is sufficient to create a genuine question of material fact on this issue, and so the Court rejects Trec's argument.

Trec further argues that plaintiff's claim fails because she "did not notify anyone *in writing* about any alleged discrimination." Trec's Mot. at 13 (emphasis added). Plaintiff admits that she did not advise Trec in writing of any allegations of unlawful discrimination during her employment. Novielli Dep. at 80:17–82:21. However, this fact is not fatal to plaintiff's claim. Rather, in deciding whether a plaintiff's activity is protected, the Third Circuit looks to "the message being conveyed rather than the means of conveyance." *Curay-Cramer*, 450 F.3d at 135. Therefore, what is relevant is the substance of the message conveyed by plaintiff to Ms. Tulskie, not whether plaintiff put that message into writing. Plaintiff testified that she conveyed to Ms. Tulskie a clear complaint of unlawful gender discrimination, which Ms. Tulskie denied. There is a genuine question of material fact as to whether plaintiff made such a complaint. Therefore, the Court concludes that plaintiff survives summary judgment on this first requirement.

### ii. Adverse Action by Employer

Next, Trec argues that "Trec Group was not the employer of the plaintiff," and it therefore did not engage in any adverse action against plaintiff. Trec's Mot. at 14. But as discussed *supra*, plaintiff has presented sufficient evidence on which a reasonable jury could find that plaintiff was a Trec employee, and that plaintiff suffered an adverse employment action. *See supra* p. 6.

### iii.   *Causal Connection*

Finally, Trec argues that the passage of time between plaintiff's alleged protected activity and her termination demonstrates that there is no causal connection between the two. Trec's Mot. at 14. The protected activity in question is plaintiff's complaint of unlawful gender discrimination to Ms. Tulskie during a meeting on October 15, 2014. Novielli Dep. at 80:1–8. The adverse employment action was plaintiff's termination, which occurred on February 20, 2015. Novielli Dep. at 53:21–54:1. The span between these dates is approximately four months. However, "[t]he mere passage of time is not legally conclusive proof against retaliation." *Marra*, 497 F.3d 302 (citation omitted). Instead, a plaintiff may rely on a "broad array of evidence" to demonstrate a causal link, and when there is an unusually long break, "courts may look to the intervening period for demonstrative proof, such as actual antagonistic conduct or animus against the employee." *Id*. For example, the Third Circuit has found a causal connection existed where plaintiff suffered a "pattern of antagonism" in the two years between his protected activity and the employer's adverse action. *Woodson v. Scott Paper Co.*, 109 F.3d 913, 921 (3d Cir. 1997).

Plaintiff has testified that she complained to Ms. Tulskie of unlawful discrimination by Mr. Mannices in October of 2014. Novielli Dep. at 80:1–8. Plaintiff further testified that in November of 2014, Mr. Mannices told plaintiff that she "needed to softer [her] tone and be less assertive," and that plaintiff considered this to be retaliation. *Id*. at 92:17–93:16. And Trec concedes that Ms. Tulskie and Mr. Mannices, together with Mr. Tulskie, made the ultimate decision to terminate plaintiff, and plaintiff's employment was ultimately terminated on February 20, 2015. Tulskie Aff; *see also* Mannices Dep. 72:10–14.

At summary judgment "the court is required to examine the evidence of record in the light most favorable to the party opposing summary judgment, and resolve all reasonable

15

inferences in that party's favor." *Wishkin*, 476 F.3d at 184. Through this lens, the Court concludes that plaintiff's testimony about Mr. Mannices' antagonism, limited as it may be, is sufficient such that a reasonable jury could find a causal connection between plaintiff's claimed protected activity and Trec's alleged adverse action.

Plaintiff has presented evidence from which a reasonable jury could find that plaintiff engaged in a protected activity, that Trec terminated her employment, which constitutes an adverse action, and that the two events are causally connected. The Court therefore rejects Trec's Motion for Summary Judgment as to plaintiff's retaliation claims.

## V.  CONCLUSION

Trec's Motion to Summary Judgment on plaintiff's hostile work environment claims under Title VII and the PHRA is granted.  Trec's Motion to Summary Judgment on plaintiff's discrimination and retaliation claims under Title VII and the PHRA are denied. An appropriate order follows.